**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:26-cv-

LARRY ROBERTS,

Plaintiff,

v.

COLORADO DEPARTMENT OF CORRECTIONS; CORECIVIC.

Defendants.

---

## COMPLAINT AND JURY DEMAND

---

Plaintiff Larry Roberts, by and through undersigned counsel, for his Complaint alleges as follows:

## NATURE OF THE ACTION

1. This is a civil rights action pursuant to 42 U.S.C. § 1983 to redress violations of Plaintiff's rights under the Eighth Amendment.

2. This action arises from Defendants' failure to provide necessary, continuous medical care to Plaintiff, resulting in a catastrophic ischemic stroke.

3. Defendants acted under color of state law and were deliberately indifferent to Plaintiff's serious medical needs.

## <u>JURISDICTION AND VENUE</u>

4. This action arises under the Constitution and laws of the United States and is brought through 42 U.S.C. § 1983.

5. Subject-matter jurisdiction is conferred on this Court pursuant to 28 U.S.C. § 1331 because, as is shown more fully in this Complaint, Plaintiff's claims arise under the Constitution and laws of the United States.

6. Jurisdiction over Plaintiff's pendent state law claims is proper under 28 U.S.C. § 1367(a) because they are so related to Plaintiff's claims arising under federal law that they form part of the same case or controversy.

7. Public entities in Colorado waive immunity under the CGIA for the negligent operation of a correctional facility. C.R.S. §24-10-106(1)(b) and (e).

8. Venue is proper in the United States District Court for the District of Colorado pursuant to both 28 U.S.C. § 1391(b)(1) and (2). Specifically, venue is proper under 28 U.S.C. § 1391(b)(1) because all of the events and omissions alleged herein occurred within the State of Colorado. Venue is also proper under 28 U.S.C. § 1391(b)(2) because at the time of the events and omissions giving rise to this litigation, all of the Defendants were operating the relevant facility in Colorado, the state in which the District of Colorado is located.

## STATUTORY FRAMEWORK

9. Colorado law expressly authorizes the Department of Corrections to contract with private entities to operate correctional facilities. See C.R.S. § 17-1-202.

10. Under this statutory scheme, any private contractor operating a correctional facility must provide medical services that are at least equal to those provided in facilities operated directly by the Department of Corrections.

11. Colorado law further imposes obligations on CDOC to ensure continuity of inmate medical care and records during transfers between facilities. See, e.g., C.R.S. §§ 17-1-108, 17-1-113,

and 17-1-113.1 (requiring maintenance and transfer of inmate medical information and ensuring continuity of care within the correctional system).

12. Colorado law also requires CDOC and its contractors to assist individuals transitioning within the correctional system in obtaining health insurance coverage and public benefits, including Social Security, to ensure access to necessary medical care. See C.R.S. § 17-1-113.5.

13. Defendants failed to comply with these statutory obligations by failing to ensure that Plaintiff was enrolled in health insurance or otherwise able to obtain his prescribed medications upon transfer.

14. These statutes reflect the Legislature's intent that inmates' medical treatment and records follow the inmate upon transfer so that necessary care is not interrupted.

15. The Department of Corrections retains oversight responsibilities and non-delegable duties to ensure that inmates receive constitutionally adequate medical care.

16. Accordingly, neither the State nor its private contractors may avoid constitutional obligations by outsourcing inmate custody and medical care.

## PARTIES

17. Plaintiff LARRY ROBERTS was, at all relevant times, an inmate in the custody of the Colorado Department of Corrections ("CDOC").

18. Defendant Colorado Department of Corrections is responsible for the custody and medical care of inmates and retains non-delegable constitutional duties.

19. Defendant CORECIVIC, INC. is a private corporation acting under color of state law by operating a community corrections facility under contract with CDOC. This facility was located at Community Corrections 14485 E. Fremont Ave., Centennial , CO 80112.

20. At all relevant times, Defendants acted under color of state law. Private entities and individuals who contract with the State to perform traditional governmental functions, including incarceration and the provision of medical care to prisoners, are considered state actors for purposes of 42 U.S.C. § 1983. See *West v. Atkins*, 487 U.S. 42, 54–56 (1988); *Smith v. Cochran*, 339 F.3d 1205, 1215–16 (10th Cir. 2003).

## IV. FACTUAL ALLEGATIONS

21. Plaintiff was sentenced to CDOC custody in 2016.

22. Plaintiff was born on December 18, 1947 and, at all relevant times, was elderly, increasing his risk of stroke.

23. Prior to his incarceration, Plaintiff was enrolled in Medicare and Medicaid and received Social Security benefits.

24. Intake screening documented hypertension, hyperlipidemia, glaucoma, hepatitis C, anemia, and a 35-year history of cardiac disease.

25. These conditions required continuous medication and monitoring.

26. Throughout his incarceration in CDOC custody, Plaintiff was consistently provided medical treatment and prescribed medications for these conditions.

27. Prior to his transfer to the Core Civic facility, Plaintiff was prescribed and regularly received amlodipine, chlorthalidone, and hydrochlorothiazide (hypertension); pravastatin

(hyperlipidemia); aspirin (cardiovascular protection); methimazole (thyroid disease); and ferrous sulfate (anemia).

28. These medications were medically necessary to reduce the risk of serious complications, including stroke, and Plaintiff's age further increased that risk.

29. On October 1, 2024, Plaintiff was transferred to a CoreCivic-operated facility.

30. Plaintiff was notified of this transfer only approximately two (2) days in advance, providing insufficient time to make arrangements for continuity of medical care or to secure insurance or alternative treatment.

31. Plaintiff was provided a 30-day supply of medications upon transfer.

32. CoreCivic refused to continue medications after that supply expired due to lack of insurance coverage.

33. CoreCivic staff expressly informed Plaintiff that he would not be provided his prescribed medications because he did not have health insurance.

34. No legitimate medical reason existed for discontinuing Plaintiff's prescribed medications.

35. From the time Plaintiff's medication supply was exhausted through the date of his stroke, Plaintiff repeatedly requested and demanded his prescribed medications, including through verbal requests and formal grievances, which were ignored or denied.

36. Even if Defendants were not obligated (and law requires them to) to provide Plaintiff's medications in the absence of insurance coverage, the thirty (30) day supply provided upon

transfer was grossly insufficient for Plaintiff to secure health insurance and obtain medical care on his own.

37. Approval for Medicare or Medicaid coverage routinely takes longer than thirty (30) days, making it foreseeable that Plaintiff would experience a gap in necessary medical treatment.

38. This is further evidenced by Colorado law requiring CDOC and its contractors to assist inmates in obtaining health insurance and benefits well in advance of release, including obligations to initiate such enrollment approximately ninety (90) days prior to release. See C.R.S. § 17-1-113.5.

39. Despite these obligations, Defendants failed to take any steps to ensure that Plaintiff was enrolled in health insurance or otherwise able to obtain his prescribed medications, resulting in a predictable and preventable interruption in care.

40. Plaintiff was not "released" from custody as contemplated by Colorado law, but was instead transferred from a CDOC-operated prison to a community corrections facility operated by CoreCivic, where he remained in the legal custody of CDOC.

41. Accordingly, the existence or absence of health insurance was irrelevant to Defendants' obligations, as CDOC retained both a statutory and constitutional duty to provide Plaintiff with necessary medical care, including prescribed medications.

42. As a practical matter, Plaintiff was not free to obtain medical care on his own. While at the community corrections facility, Plaintiff was required to obtain advance permission to leave the facility, and such permission was limited in duration, often to periods as short as one hour.

43. Plaintiff's ability to access the internet and outside resources was restricted, and he lacked financial resources and transportation necessary to independently secure medical appointments or obtain medications. Without insurance, he was also unable to pay for any medical services, given his complete lack of income.

44. These restrictions made it effectively impossible for Plaintiff to obtain necessary medical care on his own, further underscoring Defendants' obligation to provide such care.

45. Defendants were aware of these restrictions and Plaintiff's inability to obtain medical care independently, yet nevertheless failed to provide necessary treatment.

46. Defendants knew Plaintiff required continuous medication and that discontinuation created a high risk of stroke.

47. Consistent with Colorado law requiring continuity of care and transfer of medical information, Defendants were required to ensure that Plaintiff's medical records, prescriptions, and treatment plans followed him upon transfer and that his care was uninterrupted. See C.R.S. §§ 17-1-108, 17-1-113, 17-1-113.1.

48. Despite this knowledge, Defendants denied care.

49. On February 6, 2025, Plaintiff suffered an ischemic stroke.

50. Plaintiff has suffered permanent injuries.

## V. CLAIMS FOR RELIEF

### COUNT I – 42 U.S.C. § 1983 (Eighth Amendment – Both Defendants)

51. Plaintiff incorporates all preceding paragraphs.

52. Defendants knew of Plaintiff's serious medical needs and consciously disregarded them. Plaintiff's cardiac history was well documented, and indeed a diagnosis confirmed by CDOC. This diagnosis and history was required by law to be provided to Core Civic upon Defendant's transfer to the Core Civic facility. Despite these obligations, Defendants failed to provide Plaintiff with necessary medication to help prevent a stroke.

53. Defendants failure to provide Plaintiff's medication disregarded a well documented medical condition- namely Plaintiff's cardiac disease, and in so doing, incredibly increased his risk of stroke.

54. Their actions caused Plaintiff's stroke and injuries.

**COUNT II – 42 U.S.C. § 1983 (Policy/Custom – CoreCivic)**

55. Plaintiff incorporates all preceding paragraphs.

56. CoreCivic maintained and enforced policies, practices, or customs of denying necessary medical care to inmates based on their insurance status or ability to pay.

57. CoreCivic further maintained policies that failed to ensure continuity of care for inmates transferred from CDOC custody, despite knowledge of serious medical needs.

58. These policies were implemented with deliberate indifference to the known and obvious risk that inmates with chronic conditions would suffer serious harm if medications were discontinued.

59. CoreCivic's policies and customs were the moving force behind Plaintiff's injuries.

60. Private prison operators such as CoreCivic, when performing the traditional state function of incarceration and providing medical care to inmates, act under color of state law and are subject to liability under 42 U.S.C. § 1983. See *West v. Atkins*, 487 U.S. 42 (1988); *Smith v. Cochran*, 339 F.3d 1205 (10th Cir. 2003).

61. This policy of failing to provide necessary and documented medication caused Plaintiff's stroke, and as such he suffered great injury.

**COUNT III – 42 U.S.C. § 1983 (Failure to Ensure Care – both Defendants)**

62. Plaintiff incorporates all preceding paragraphs.

63. CDOC had a non-delegable duty under the United States Constitution and Colorado law to ensure that inmates in its custody received adequate medical care.

64. This duty arises from the State's custodial relationship with inmates and continues so long as an individual remains in state custody, regardless of whether the inmate is housed in a facility operated directly by CDOC or by a private contractor. See *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 199–200 (1989); *Estate of Hocker v. Walsh*, 22 F.3d 995, 998 (10th Cir. 1994).

65. CDOC could not discharge its constitutional obligations by transferring Plaintiff to a CoreCivic-operated facility, as the duty to provide adequate medical care is non-delegable and remains with the State. See *West v. Atkins*, 487 U.S. 42, 56 (1988); *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980).

66. At all relevant times, Plaintiff remained in the legal custody of CDOC and was not free to obtain medical care on his own, thereby maintaining CDOC's continuing obligation to ensure constitutionally adequate medical treatment.

67. CDOC knew of Plaintiff's serious medical conditions, his need for continuous medication, and the substantial risk of harm if such treatment was discontinued.

68. CDOC further knew or should have known that CoreCivic maintained policies or practices that resulted in denial of necessary medical care, including denial based on insurance status.

69. Despite this knowledge, CDOC transferred Plaintiff without ensuring continuity of care and failed to monitor or intervene when Plaintiff's medical needs were not met.

70. CDOC's acts and omissions constituted deliberate indifference and were a direct and proximate cause of Plaintiff's injuries.

**COUNT IV – State Law Negligence (CGIA)- both Defendants**

71. Plaintiff incorporates all preceding paragraphs.

72. Defendants negligently operated the correctional facility. Defendants, who contracted with Core Civic to house Plaintiff, failed to ensure that necessary medical care was provided to him. As such, by failing to provide Plaintiff with his necessary medication, Plaintiff suffered exactly the type of harm that medication was intended to prevent- a stroke. Thus, CDOC disregarded a duty owed to Plaintiff, and as a result, he suffered great physical injury. As a contracted privately run facility, CoreCivic was standing in the shoes of CDOC in their operation of this facility, and thus are liable for Plaintiff's injuries.

73. Immunity is waived under C.R.S. § 24-10-106.

74. Plaintiff provided written notice of this claim in compliance with C.R.S. § 24-10-109 to the Colorado Attorney General on August 5, 2025.

75. More than ninety (90) days have passed without response.

## VI. DAMAGES

76. Plaintiff has suffered severe and permanent injuries.

77. Plaintiff seeks compensation for injuries caused by both Defendants, which caused him to experience great physical pain, injury, and exposed him to great risk of death. This experience continues to cause Plaintiff lasting physical injuries and has diminished his quality of life.

78. Plaintiff seeks all other damages, to include economic, compensatory, punitive, attorneys fees, costs and any other category of damages permitted by law.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests judgment against Defendants for damages, attorney's fees, costs, and all other appropriate relief.

## VIII. JURY DEMAND

Plaintiff demands a trial by jury.

DATED: 09/1/2026

Respectfully submitted,

/s/ Kevin Mehr

**KEVIN MEHR, #49108**
Mehr Jolly, PLLC
Kevin.Mehr@mehrjolly.com
/s/Tyler Jolly
**TYLER JOLLY, #52361**
Mehr Jolly, PLLC
Tyler.Jolly@mehrjolly.com
3107 W. Colorado Ave.
#184
Colorado Springs, CO 80904